JACK HAYES, Plaintiff-Appellee v. EVERGO TELEPHONE COMPANY, LTD., AND EVERGO TRADING COMPANY, LTD., Defendants-Appellants

No. 9021SC67

(Filed 30 October 1990

1. **Process § 9 (NCI3d) — Hong Kong company — service of process by international mail**

   Service of process by international registered mail on defendants in Hong Kong was sufficient under Articles 10(a) and 19 of The Hague Convention since service through a Central Authority is not the exclusive method of serving defendants in other nations; Hong Kong has not objected to any portion of Article 10; and the internal law of Hong Kong permits service of process through the mail.

   **Am Jur 2d, Process § 383.**

2. **Process § 9.1 (NCI3d) — jurisdiction over Hong Kong company — long-arm statutes — due process**

   North Carolina's long-arm statutes permitted the exercise of jurisdiction over defendant Hong Kong limited company in an action to recover for injuries allegedly caused by a telephone where the evidence showed that defendant sells ceiling fans to various retailers operating stores in North Carolina; defendant has sales of $35 million in the United States; defendant has made no attempt to limit the geographic distribution of its products to any certain states; and the phone which caused plaintiff's injuries was purchased in a North Carolina store. Furthermore, the exercise of in personam jurisdiction over defendant did not violate due process where the injury to plaintiff occurred in North Carolina; the majority of the witnesses are in North Carolina and the substantive law of this state controls; and North Carolina's interest in adjudicating this matter was much greater than the minimal burden on defendant to defend this action.

   **Am Jur 2d, Courts § 146; Process § 301.**

   **Construction and application, as to isolated acts or transactions, of state statutes or rules of court predicating in personam jurisdiction over nonresidents or foreign corporations upon the doing of an act, or upon doing or transacting business or "any" business, within the state. 27 ALR3d 397.**

HAYES v. EVERGO TELEPHONE CO.

[100 N.C. App. 474 (1990)]

### 3. Rules of Civil Procedure § 60.2 (NCI3d) — default judgment — insurer's refusal to defend — absence of excusable neglect

The trial court properly refused to set aside a default judgment on the ground of excusable neglect and a meritorious defense where defendants had two weeks to retain North Carolina counsel and file an answer after they learned that their insurance carrier denied coverage and refused to defend the action; plaintiff's counsel waited some three months before moving for default and sent defendants a letter stating his intention to seek default if defendants failed to respond; and defendants still failed to take any action to defend plaintiff's suit. N.C.G.S. § 1A-1, Rule 60(b)(1).

**Am Jur 2d, Judgments §§ 1166, 1174, 1178.**

APPEAL by defendants from a judgment entered 18 August 1989 by *Judge W. Steven Allen, Sr.* in Superior Court, FORSYTH County. Heard in the Court of Appeals 29 August 1990.

On 11 March 1988, plaintiff commenced this action against Evergo Manufacturing of America, Inc. ("EMA"). EMA filed an answer on 14 April 1988. Plaintiff then amended his complaint to include Evergo Telephone Company, Ltd. ("Evergo Telephone") and Evergo Trading Company, Ltd. ("Evergo Trading") as defendants. Both defendants are Hong Kong limited companies. On 12 October 1988, plaintiff served Evergo Telephone and Evergo Trading by sending the summons and complaint via international registered mail, return receipt requested, to their business addresses.

Default was entered against Evergo Trading and Evergo Telephone on 23 January 1989. On 21 February 1989, plaintiff filed a motion for partial summary judgment against Evergo Telephone and Evergo Trading. This motion was granted on 27 March 1989.

Plaintiff settled with EMA for $8,000.00 and on 21 April 1989 dismissed his complaint as to that defendant.

On 16 June 1989, defendants retained local counsel who entered an appearance for defendants and filed Motions to Dismiss, Motions to Quash, Motions to Set Aside Entry of Default and Partial Summary Judgment and Motions for Extension of Discovery Period. All of these motions were denied on 14 August 1989.

The matter came on for trial before a jury at the 1 August 1989 Civil Jury Session in Forsyth County. The jury returned a

HAYES v. EVERGO TELEPHONE CO.

[100 N.C. App. 474 (1990)]

verdict in favor of the plaintiff in the amount of $78,000.00, against which Judge Allen credited the $8,000.00 settlement plaintiff received from EMA, leaving a judgment against defendants in the amount of $70,000.00. Judge Allen denied defendants' motions for a judgment notwithstanding the verdict and for a new trial. Defendants appeal.

*House and Blanco, P.A., by Peter J. Juran, for plaintiff-appellee.*

*Adams, Kleemeier, Hagan, Hannah & Fouts, by David A. Senter, for defendants-appellants.*

LEWIS, Judge.

I. Sufficiency of Service of Process Via International Mail

[1] Defendants first assert that the plaintiff's service of process via international mail was insufficient as a matter of law and justifies setting aside partial summary judgment and dismissing plaintiff's claims. Plaintiff effected service of process upon defendants by sending the summons, together with the complaint, via registered mail, return receipt requested.

In 1969, the United States signed the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (20 U.S.T. 361-367, T.I.A.S. 6638) ("The Hague Convention"). This international treaty was also ratified by Hong Kong. The Convention "was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988).

The Hague Convention provides a number of acceptable methods for service of foreign process, including the creation or designation by each adherent of a Central Authority to receive requests for service of documents from other countries and to serve those documents in accordance with the internal law of the recipient nation. 20 U.S.T. 362, T.I.A.S. 6638, Art. 5. Appellee concedes that he never sent either a request or the relevant documents to the designated Central Authority in Hong Kong. Service through a Central Authority, however, is not necessarily the exclusive method of serving defendants resident in party-nations. This appeal concerns the interpretation of Article 10(a) and Article 19 of the Con-

vention, and whether these Articles provide an alternative method for service of process via international mail.

Article 10(a) provides:

Provided the State of destination does not object, the present Convention shall not interfere with —

(a) the freedom *to send* judicial documents, by postal channels, directly to persons abroad,

(b) the freedom of judicial officers, officials or other competent persons of the State of origin *to effect service* of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination[,]

(c) the freedom of any person interested in a judicial proceeding *to effect service* of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

*Id.* (Emphasis added). Hong Kong has not objected to any portion of Article 10.

Article 19 provides: "To the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions."

These Articles pose two different questions: first, whether the authority in Art. 10(a) "to send judicial documents, by postal channels, directly to persons abroad" includes the authority to serve process by those channels; and, second, whether internal Hong Kong law permits service of process in that manner. *Nicholson v. Yamaha Motor Co., Ltd., et al.*, 80 Md. App. 695, 702, 566 A.2d 135, 139 (1989).

The applicable rules of procedure in Hong Kong apparently allow service of process by registered mail in domestic civil cases.

A split currently exists among United States jurisdictions as to whether the words "to send" found in Article 10(a) are equivalent to the words "to serve" found elsewhere in the Convention, thereby allowing Article 10(a) to support service of process via international mail. *Suzuki Motor Co. v. Superior Court*, 200 Cal. App. 3d 1476, 249 Cal. Rptr. 376 (1988), is representative of the view of those

jurisdictions that conclude that Article 10(a) of the Hague Convention does not encompass documents that require formal service. *Suzuki* involved service of process upon a Japanese defendant. Japan has objected to Article 10(b) and 10(c) of the Convention. The California Court of Appeals reasoned:

> Given the fact that Japan itself does not recognize a form of service sufficiently equivalent to America's registered mail system, it is extremely unlikely that Japan's failure to object to Article 10, subdivision (a) was intended to authorize the use of registered mail as an effective mode of service of process, particularly in light of the fact that Japan specifically objected to the much more formal modes of service by *Japanese officials* which were available in Article 10. . . . [T]he fact that the Convention's drafters used both the phrase 'to send' and the phrase 'service of process' indicates they intended each phrase to have a different meaning and function.

*Id.* at 1481, 249 Cal. Rptr. 379.

Interestingly, the opposing view was first articulated in a California court. In *Shoei Kako Co., Ltd. v. Superior Court*, 33 Cal. App. 3d 808, 109 Cal. Rptr. 402 (1973), the court held that the Convention did permit service of process by mail on a Japanese defendant, concluding,

> Although there is some merit to the proposed distinction it is outweighed by consideration of the entire scope of the convention. . . . The reference to 'the freedom to send judicial documents by postal channels, directly to persons abroad' would be superfluous unless it was related to the sending of such documents for the purpose of service. The mails are open to all.

*Id.* at 821, 109 Cal. Rptr. 411. *Shoei* was not overruled by *Suzuki*, instead the California Court of Appeals held that it was not bound by *Shoei* because of factual differences in the two cases. *Suzuki*, *supra* at 1479, 249 Cal. Rptr. 376, 377. The *Shoei* court observed that ratification of the Hague Convention by the United States Senate came only four years after promulgation of Rule 4(i)(1)(D) of the Federal Rules of Civil Procedure, allowing service in a foreign country by any form of mail requiring a signed receipt, addressed to the person to be served. It concluded that by ratifying Article 10(a) of the Convention the Senate could not have intended to abrogate Rule 4, but instead "intended to retain service by mail

## HAYES v. EVERGO TELEPHONE CO.

[100 N.C. App. 474 (1990)]

. . . as an effective method of service of process in a foreign country unless that country objected to those provisions." *Id.* at 822, 109 Cal. Rptr. 412. *See also Ackermann v. Levine*, 788 F.2d 830, 839 (2d Cir. 1986). More recently, in *Nicholson v. Yamaha Motor Co., Ltd.*, 80 Md. App. 695, 566 A.2d 135 (1989), *cert. denied*, 318 Md. 683, 569 A.2d 1242 (1990), the Maryland Court of Appeals concluded that service of process by mail upon a Japanese defendant was permissible because

> (1) when adopting the Convention, the Japanese were presumably aware of U.S.Fed.R.Civ.P. 4(i) . . . (2) since then, they have been aware of the decisions in many Federal cases that art. 10(a) does not prohibit service in Japan by that method, (3) under that line of decisions, U.S. based assets of Japanese nationals would be subject to seizure to satisfy judgments founded upon such service, and (4) in their only Declaration on the matter, they did not expressly negate the validity of such service. . . . Principally on that basis—because otherwise there are compelling arguments on both sides of the issue—we conclude that service may be effected on a Japanese defendant.
> . . .

*Id.* at 709-710, 566 A.2d 135, 142-43. *See also Meyers v. ASICS Corp.*, 711 F. Supp. 1001 (C.D. Cal. 1989); *Newport Components v. NEC Home Electronics*, 671 F.Supp. 1525 (C.D. Cal. 1987), *Tamari v. Bache and Co.*, 431 F.Supp. 1226, 1228-9 (N.D. Ill. 1977), *aff'd*, 566 F.2d 1194 (7th Cir. 1977), *cert. denied*, 435 U.S. 905, 55 L.Ed.2d 495 (1978).

We conclude that service of process via international mail in this case was in conformity with the provisions of the Hague Convention. We find particularly compelling the fact that, unlike Japan, Hong Kong has not objected to any portion of Article 10 and apparently the internal law of Hong Kong permits service of process through the mail. Defendants do not argue that they did not receive process and indeed plaintiff sent a letter notifying the defendants of his intention to obtain a default judgment if an answer was not filed in the case. Defendants do not argue that they did not receive any of these documents. The trial court did not err in refusing to dismiss plaintiff's claims and set aside entry of partial summary judgment and default based upon insufficient service of process.

## II. Existence of In Personam Jurisdiction

[2]   Defendant Evergo Trading next argues that North Carolina lacks in personam jurisdiction. Defendant Evergo Telephone concedes that North Carolina validly exercised jurisdiction over it. A judgment entered against a defendant over which the Court does not have in personam jurisdiction is void and subject to being set aside pursuant to G.S. 1A-1, Rule 60(b)(4). *Allred v. Tucci*, 85 N.C. App. 138, 354 S.E.2d 291, *disc. rev. denied*, 320 N.C. 166, 358 S.E.2d 47 (1987). Challenges to in personam jurisdiction present a two-part inquiry; first, whether the statutes of North Carolina permit the exercise of jurisdiction, and second, whether exercising in personam jurisdiction over the defendant violates due process of law. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674-75, 231 S.E.2d 629, 630 (1977). Evergo Trading apparently had nothing to do with the manufacture of the telephone which caused plaintiff's injuries. In fact, defendant argues that if allowed to present evidence as to its liability, it could show that Evergo Trading was not even incorporated at the time plaintiff received and used the telephone. However, plaintiff contends that these arguments are irrelevant since it can show that North Carolina's long-arm statutes permit the exercise of jurisdiction over Evergo Trading and that exercising jurisdiction over the defendant did not violate due process. We agree with the plaintiff.

At the time of hearing on defendants' motions to dismiss, plaintiff was able to show that Evergo Trading sells ceiling fans to distributors, including Lowe's, K-Mart, and Montgomery Ward, all of which operate stores in North Carolina. Evergo Trading has sales of approximately $35 million dollars in the United States. It has made no attempt to limit the geographic distribution of its products to any certain state or states. Both defendants carry insurance for their sales and products throughout the United States. The phone which caused plaintiff's injuries was purchased in a North Carolina Lowe's store. Although Evergo Trading did not have contacts with North Carolina as to the telephone, because of its substantial business in the United States and the unlimited geographic distribution of its products, we conclude that Evergo Trading could reasonably have expected to be haled into our courts. G.S. 1-74.4(1)(d), *Bush v. BASF Wyandotte Corp.*, 64 N.C. App. 41, 306 S.E.2d 562 (1983); *ETR Corp. v. Wilson Welding Service, Inc.*, 96 N.C. App. 666, 386 S.E.2d 766 (1990). The assertion that Evergo Trading was not in any way involved in the manufacture

**HAYES v. EVERGO TELEPHONE CO.**

[100 N.C. App. 474 (1990)]

of the telephone may have provided an excellent defense to this action. However, defendants failed to file an answer in this case after actual service and therefore waived all defenses relating to its liability in this matter.

Our conclusion that the exercise of jurisdiction over the defendant is in accordance with our long-arm statutes is also in conformity with our fundamental notions of "fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980). The injury to the plaintiff occurred in North Carolina; the product was purchased in North Carolina; the majority of the witnesses are in North Carolina and North Carolina substantive law controls. North Carolina's interest in adjudicating this matter was much greater than the minimal burden on defendant to defend this action. *See E.T.R. Corp. v. Wilson Welding Service, Inc., supra.*

### III. Existence of Excusable Neglect

[3] Finally, defendants urge this Court to reverse the trial court's denial of their Rule 60 motion based upon their alleged showing of "excusable neglect" and the existence of a meritorious defense. G.S. 1A-1, Rule 60(b)(1). We find that the trial judge did not abuse his discretion in refusing to set aside the judgment on these grounds.

Upon commencement of this action, defendants contacted their insurance carrier and their California attorney about the case. Some dispute arose amongst these parties as to whether the insurance company would defend the appellants in this action. On 18 November 1988, defendants' carrier denied coverage and refused to defend this action. Defendants still had two weeks to retain North Carolina counsel and file an answer. This they did not do. A defendant may not simply turn a case over to its insurer and then do nothing. *Milks v. Clark's Greensboro, Inc.*, 260 N.C. 676, 677, 133 S.E.2d 517, 518 (1963). A defendant must give its litigation matters that level of attention one gives important business matters; the primary duty of attending to litigation remains with the defendant. *Howard v. Williams*, 40 N.C. App. 575, 578, 253 S.E.2d 571, 573 (1979). In the present case, defendants were well aware of the fact that their insurance carrier refused to represent them in this matter. Counsel for plaintiff waited some three months before moving for default and he also sent them a letter stating his intention to seek default if the defendants continued to fail to respond. There was sufficient time to protect their interests and defendants did

nothing. Accordingly, the trial court refused to grant them relief from the judgment. We hold that under the circumstances, this was not an abuse of discretion.

## IV. Conclusion

We have considered defendants' remaining assignments of error and find them to be without merit. For the reasons stated above, we affirm the trial court.

Affirmed.

Judges WELLS and EAGLES concur.