ARCO ELECTRONICS CONTROL LTD., an Israeli corporation, Plaintiff,

v.

CORE INTERNATIONAL, a Florida corporation, Defendant.

No. 91–6189–CIV.

United States District Court, S.D. Florida, Fort Lauderdale Division.

July 28, 1992.

Marshall Jerome Cooper, Cooper & Frazier, Fort Lauderdale, Fla., for plaintiff.

Laurence D. Gore, Fort Lauderdale, Fla., Luis Konski, Stewart, Bamsky, Marcus & Konsk, Miami, Fla., for defendant.

### ORDER ON MOTION TO DISMISS

ROETTGER, Chief Judge.

THIS CAUSE is before the Court on a motion to dismiss by Defendant, CORE INTERNATIONAL, ("CORE"). Upon consideration of the motion, memoranda, and the entire record in this cause, it is

ORDERED AND ADJUDGED that the motion is GRANTED for the reasons set forth in this order.

This litigation arises out of a contract entered between Plaintiff, ARCO ELECTRONIC CONTROL, LTD., ("ARCO") and Defendant CORE on May 31, 1988 in Tel-Aviv, Israel, for the sale of certain goods. The contract recites that CORE is a Florida corporation, while ARCO is both "an Israel corporation and/or ... a District of Columbia corporation." [1]

ARCO developed the "ARCO 1060 ESDI disc controller," a standard computer controller, of which CORE agreed to purchase certain minimum quantities. Pursuant to the agreement CORE purchased 1,439 controllers which were delivered to Miami, Florida, in 1989.

The following year CORE agreed to purchase an additional 419 controllers from ARCO. After the controllers were shipped, CORE sent ARCO a purchase order for 419 controllers, allegedly to confirm the purchase of the first group of 419. Upon receipt of the purchase order ARCO shipped another 419 controllers to CORE, which CORE shipped back to the Plaintiff in Israel. CORE never paid for the second shipment of controllers in 1990.

ARCO then sued CORE in Israel for breach of contract, and attempted to serve

---

1. Because of the facts alleged in the instant case, it has progressed as if Plaintiff is a corporation of Israel. If treated as a District of Columbia corporation, clearly the attempted service fails.

CORE in Florida via registered, first class mail. When CORE failed to respond to the service of process, ARCO secured a final default judgment against CORE from the Israeli Court in the amount of $77,934.00 dollars, exclusive of interest and costs.[2] In this Court the controversy takes the form of an action to enforce the Israeli judgment filed by Plaintiff on March 19, 1991, invoking the Court's diversity jurisdiction. Defendant responded with a motion to dismiss. CORE raised several grounds in support of its motion to dismiss; however, it's only necessary to discuss one ground.

The Court has not discovered any cases in the Southern District of Florida, or in the Eleventh Circuit Court of Appeals addressing the issues raised here, nor have counsel supplied any authorities.

Essentially, CORE argues that service of process in the original Israeli action was not proper because it failed to comply with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the Hague Convention"). Because the Court agrees with CORE that service was improper, it need not reach any other contention.

### THE HAGUE CONVENTION

CORE urges the Court to dismiss this case due to improper service in the Israeli action under the Hague Convention, a multilateral, international treaty ratified by twenty-three countries, including the United States and Israel. As a ratified treaty, the Hague Convention is of equal dignity with acts of Congress and enjoys the constitutional status of "supreme Law of the Land." U.S. Const. Art. VI, cl. 2; *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 373 (7th Cir.1985). Furthermore, as a self-executing treaty, the Hague Convention establishes affirmative, judicially enforceable obligations; congressional acts implementing the treaty are not necessary. *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575 (4th Cir.1983).

The intention of the signatory nations was to provide a simpler way to serve process abroad. *Volkswagenwerk A.G. v. Schlunk*, 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988). In furtherance of this goal, the Convention provides several methods to accomplish service abroad. Arts. 2–6, 8–11, and 19. In the instant case ARCO served CORE in the Israeli action by mailing a copy of the summons and complaint to CORE's Florida address by registered, first class mail. ARCO contends that this method fully complies with Article 10, specifically subparagraph (a) of the Convention, which provides as follows:

Provided the State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination.

The introductory phrase of Article 10— "Provided the state of destination does not object"—gave each signatory state the opportunity to raise objections to the substance of the remainder of the Article. These objections, if any, were raised pursuant to Article 21 which provides that "Each contracting state shall similarly inform the Ministry, where appropriate, of (a) opposition to the use of methods of transmission pursuant to Articles 8 and 10." The responses varied greatly. Some states objected to all of Article 10,[3] some specifically objected to Paragraph 10(a),[4] some gave

---

**2.** See Complaint, Exhibit A, Official Translation of Judgment.

**3.** Federal Republic of Germany, Norway, Egypt, Turkey.

**4.** Czechoslovakia.

specific instructions with regard to 10(b) & (c) but were silent as to 10(a),[5] while still others were completely silent.[6]

The question of whether ARCO's service of process complied with the Hague Convention turns on whether Article 10(a) provides for a method of service at all. The Court finds that it does not.

Two distinct lines of authority concerning this issue have evolved: one led by the Second Circuit, the other by the Eighth. In *Ackermann v. Levine*, 788 F.2d 830 (2d Cir.1986), the Second Circuit upheld service by mail upon an American defendant by a German plaintiff to enforce a German default judgment.[7] The Court concluded that the word "send" in Article 10(a) was intended to mean "service." Therefore, because the United States made no objection to the use of 'postal channels' under Article 10(a), service of process by registered mail is an appropriate method of service in the United States. *Ackermann*, 788 F.2d at 839. Unfortunately, the Second Circuit based its interpretation that "send" equals "service" upon the shaky assumption that the use of the word "send" in paragraph 10(a) "must be attributed to careless drafting." *Id.* at 839.

The Eighth Circuit was not willing to make the same initial finding regarding the meaning of the term "send" necessary to reach this conclusion. In *Bankston v. Toyota Motor Corp.*, 889 F.2d 172 (8th Cir. 1989), the Eighth Circuit concluded that sending a copy of a summons and complaint by registered mail to a defendant residing abroad did *not* comply with the Convention since Article 10(a) "merely provides a method for sending subsequent documents *after* service of process has been obtained by means of the central authority." *Id.* at 174 (emphasis supplied). Using familiar canons of statutory construction, the Court determined that the treaty meant

what it said, and was not willing to indulge in assumptions and presumptions about what the drafters "intended."

This Court believes that legislatures, including treaty conventions, act intentionally, and that the statutory language is conclusive. Where a legislative body uses particular language in one place but not in another, "it is generally presumed that the body acts intentionally." *Id.* See also, *Wasden v. Yamaha Motor Co., Ltd.*, 131 F.R.D. 206 (M.D.Fla.1990).

In this case the treaty provides several highly structured methods for accomplishing service of process abroad,[8] and uses the term "service" when discussing these methods. Therefore, it can hardly be assumed that "careless drafting" led to the use of the term "send," rather than "service," when these words are *not* interchangeable and the terms "service" and "service of process" are terms of art having specific legal and technical meaning.

It is not possible that registered mail complies with one of the prescribed methods for accomplishing service of process, because Article 10(a) does not refer to service at all. This provision enables the parties to "send" documents, e.g. motions or discovery responses after service has been perfected, whereas all other provisions intending to create methods of service use the terms "serve," "service" or "to effect service." *See* Arts. 1, 2, 3, 5, 6, 8, 9, 10(b), 10(c), 11, 12, 13, and 19.

DONE AND ORDERED.

## ORDER

SUA SPONTE, the court exercises its right to modify orders for the purpose of correctness or completeness and does so on its Final Order to Dismiss in this case, which corrected order is filed this date as

---

5. Japan, Sweden, Botswana, Finland, United Kingdom.

6. Portugal, United States, France, Italy, Netherlands.

7. The enforcement proceeding was a three day non-jury trial. *Ackermann v. Levine*, 610 F.Supp. 633 (S.D.N.Y.1985).

8. For example, the treaty directs that each state "*shall* designate à Central Authority" (such as United States Department of Justice) to receive and process requests for service, and litigants can also use consular or diplomatic channels if necessary. *See*, Arts. 2, 9.

of the date of entry of the Final Order on March 30, 1992.

Nothing of substance is changed.

DONE AND ORDERED.