JANICE ELLEN JANUZIK TATARAGASI, Plaintiff v. AHMET IHSAN TATARAGASI, Defendant

No. COA95-1122

(Filed 5 November 1996)

## 1. Appeal and Error § 107 (NCI4th)— child custody order— denial of motion to vacate—appealable order

The trial court's order denying defendant's motion to vacate and set aside a previous order which was, in effect, a final determination of child custody left no further action to be determined and was an appealable final judgment on the merits.

**Am Jur 2d, Appellate Review § 196.**

## 2. Process and Service § 74 (NCI4th)— service in foreign country—Hague Convention—good faith attempt—analysis under Rule 4 standard

Plaintiff wife made a good faith attempt to obtain service of process on defendant husband in Turkey in a child custody action where she attempted to serve defendant pursuant to the Hague Convention but the documents were returned unserved because they had not been translated into Turkish. This good faith effort allows a court to apply the standard of N.C.G.S. § 1A-1, Rule 4 in analyzing the propriety of service of process.

**Am Jur 2d, Divorce and Separation § 1113; Process §§ 377-384.**

**Service of process by mail in international civil action as permissible under Hague Convention. 112 ALR Fed. 241.**

## 3. Process and Service § 74 (NCI4th)— service in foreign country—mailing by attorney rather than clerk—acceptance by housekeeper

Service of process by mail on the defendant in Turkey in a child custody action was not improper because the summons and

complaint were addressed and mailed by plaintiff's attorney rather than by the clerk of court where defendant received actual notice of plaintiff's action against him. Furthermore, service of process was effectively made under Rule 4(j3) where it was accepted by defendant's housekeeper. N.C.G.S. § 1A-1, Rule 4(j3).

**Am Jur 2d, Process §§ 377-384.**

**Personal service upon nonresident spouse as prerequisite of court's power to modify its decree as to child support in matrimonial action. 62 ALR2d 544.**

**Service of process by mail in international civil action as permissible under Hague Convention. 112 ALR Fed. 241.**

**4. Divorce and Separation § 494 (NCI4th)— child custody— nonresident defendant—home state of children—jurisdiction under UCCJA**

Personal jurisdiction over a nonresident defendant was not required under the Uniform Child Custody Jurisdiction Act where this state is the home state of the children. N.C.G.S. § 50A-3(a)(1).

**Am Jur 2d, Abduction and Kidnapping § 37; Divorce and Separation § 964; Infants § 35.**

**When does state that issued previous custody determination have continuing jurisdiction under Uniform Child Custody Jurisdiction Act (UCCJA) or Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A. 83 ALR4th 742.**

**Domicile and residence jurisdiction of court under § 3(a)(2) of the Uniform Child Custody Jurisdiction Act (UCCJA) and the Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A(c)(2)(b). 5 ALR5th 550.**

**Home state jurisdiction of court under § 3(a)(1) of the Uniform Child Custody Jurisdiction Act (UCCJA) or the Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A(c)(2)(A). 6 ALR5th 1.**

**5. Divorce and Separation § 491 (NCI4th)— child custody— pending action in Turkey—jurisdiction under UCCJA**

The trial court did not err by exercising subject matter jurisdiction in a child custody proceeding, even though defendant father had initiated a custody proceeding in Turkey before the present action was filed, where Turkey did not exercise jurisdic-

TATARAGASI v. TATARAGASI

[124 N.C. App. 255 (1996)]

tion in substantial conformity with the Uniform Child Custody Jurisdiction Act and state law because the Turkish court's order did not consider the best interests of the children but instead discussed only defendant's position and status in the community and the importance of Islam, circumcision and defendant's place in society. N.C.G.S. § 50A-3.

**Am Jur 2d, Infants § 38.**

**Validity, construction, and application of Uniform Child Custody Jurisdiction Act. 96 ALR3d 968.**

**6. Divorce and Separation § 497 (NCI4th)— child custody— action pending in Turkey—emergency jurisdiction under UCCJA**

The trial court had emergency jurisdiction under N.C.G.S. § 50A-3(a)(3) to determine the custody of children whose father had filed a custody action in Turkey where the children were physically present in this state and the trial court found that defendant had repeatedly abused the children.

**Am Jur 2d, Infants §§ 37, 55.**

**Abandonment and emergency jurisdiction of court under § 3(a)(3) of the Uniform Child Custody Jurisdiction Act (UCCJA) and the Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A(c)(2)(C). 5 ALR5th 788.**

Appeal by defendant from order entered 8 May 1995 by Judge J. Bruce Morton in Guilford County District Court. Heard in the Court of Appeals 23 May 1996.

*Cunningham, Dedmond, Petersen & Smith, by Bruce T. Cunningham, Jr., for plaintiff-appellee.*

*Hill, Evans, Duncan, Jordan & Davis, A Professional Limited Liability Company, by William W. Jordan and Michele G. Smith, for defendant-appellant.*

JOHNSON, Judge.

Plaintiff and defendant were married on 30 October 1982 in Greensboro, North Carolina. Mrs. Tataragasi is an American citizen, and Dr. Tataragasi is a citizen of Turkey. The couple moved to Ankara, Turkey after their marriage. Plaintiff alleges that defendant insisted

that they move to Turkey under the pretense that he needed to complete his military training. Plaintiff and her family understood that this was to be a temporary move for six (6) months. Afterward, plaintiff alleges that defendant admitted to plaintiff and to plaintiff's family that he lied about the move being temporary.

While residing in Turkey, plaintiff and defendant had two children—Eren Deniz Tataragasi born 3 July 1984 and Kenan Haluk Tataragasi born 2 October 1987. After the birth of the children, defendant made it clear that he had no intention of returning to the United States.

Throughout the marriage, defendant had a history of violent and abusive behavior toward family members and non-family members, but particularly toward the female child, Eren. On numerous occasions, defendant hit, beat, kicked, grabbed and threatened Eren. Defendant was also physically and sexually abusive toward plaintiff.

Frequently, defendant threatened to kill plaintiff if she tried to leave with the children. Further, he refused to allow plaintiff to separate from him and refused to share the children with plaintiff if she did separate.

Plaintiff and her children came to the United States to visit her family in June 1991. While in the States, she attempted to become sterilized since the United States, unlike Turkey, did not require permission of the husband for the procedure. However, before conducting the procedure, the physician encouraged plaintiff to seek counseling. At this time, plaintiff told her physician that she was planning to return to Turkey. Therapy enabled plaintiff to realize that she and her children were being physically and emotionally abused, that she did have a viable choice and that she could leave the abusive relationship. Plaintiff decided, for the safety of herself and her children, that she needed to separate from and divorce defendant. At that time, plaintiff decided to reside permanently in the United States.

Defendant's family made numerous threats to abduct the children and take them back to Turkey. In December of 1991, defendant's younger sister threatened that defendant could hire people to abduct the children from plaintiff and take the children to Turkey whenever he wished. After 1 January 1992, defendant's brother-in-law threatened that the children were not safe from defendant if he wished to take them back to Turkey.

## TATARAGASI v. TATARAGASI

[124 N.C. App. 255 (1996)]

A lawsuit was initiated by plaintiff on 30 July 1991 in the Guilford County District Court. Judge J. Bruce Morton granted an emergency custody order awarding custody to plaintiff and ordered that defendant not go near plaintiff or the children. On 6 September 1991, Judge Morton granted an amended emergency custody order, again awarding custody to plaintiff and ordering that defendant not go near plaintiff or the children. Plaintiff's counsel communicated with Michael Regan, counsel for defendant, on 9, 10 and 12 September 1991. Plaintiff's counsel was informed that defendant had been made aware of the order.

On 12 September 1991, plaintiff's counsel offered to amend the amended emergency custody order in order to enable defendant to have supervised visitation with the minor children while defendant was visiting the United States. Plaintiff's counsel also inquired of Mr. Regan whether defendant would be willing to accept service through Mr. Regan's office. Plaintiff's counsel sent Mr. Regan copies of orders on 16 September 1991 and 26 September 1991. Orders extending the amended emergency custody order were granted until 1 November 1991.

Having not received a response from Mr. Regan as to whether defendant would accept service through his office, on 28 October 1991, counsel for plaintiff attempted, pursuant to the Convention on the Service Abroad of Judicial and ExtraJudicial Documents in Civil or Commercial Matters (the Hague Convention), to serve upon defendant a copy of the complaint, a copy of the emergency custody order, and copies of all of the orders extending the emergency custody order. Service was rejected. The documents were returned unserved to plaintiff's counsel in damaged condition by the Central Authority in Turkey on 7 January 1992. The documents were returned because they had not been translated into Turkish as required by the Hague Convention.

According to defendant, plaintiff never secured an endorsement or an alias or pluries summons in the 30 July 1991 action and she did not attempt service of any of the documents related to that action until 4 November 1991. Therefore, defendant alleges service of process is insufficient.

On 2 October 1991, defendant filed an action in Turkey for divorce and for the adjudication of custody of the parties' two children. Defendant alleges that plaintiff was properly served with the Turkish petition under the provisions of the Hague Convention and

other applicable law. A hearing on defendant's petition was held in the Twenty-second Basic Peace Court in Ankara, Turkey on 16 June 1992. Plaintiff made an appearance through counsel in the Turkish action, made a written defensive statement, and submitted written statements of witnesses taken under oath. The court granted defendant a divorce and custody of the couple's children. The court also granted plaintiff the right to visit with the children wherever they might reside with their father and the right to contact the children if she did not reside in the same country as defendant and the children.

On 10 January 1992, after defendant initiated the Turkish action, but before the Turkish court issued its final decree, plaintiff initiated this action in Guilford County, North Carolina. Due to the length of time that defendant evaded service, plaintiff took a voluntary dismissal without prejudice on 8 January 1992 and refiled the action on 10 January 1992 because, by this time, the trial court had jurisdiction not only on the basis of the emergency situation resulting from defendant's history of violent and abusive behavior towards plaintiff and the minor children, but also on the basis of home state and significant contacts. On 10 January 1992, the complaint, summons, emergency custody order, and calendar request were sent to defendant by registered mail, return receipt requested. Service was accepted by defendant's maid on 20 January 1992. Defendant alleges that the documents were accepted by a part-time housekeeper who was not a member of defendant's household and who was not authorized to accept service on defendant's behalf.

On 12 February 1992, counsel for plaintiff filed an affidavit of service confirming that the summons and complaint were delivered to, and accepted by, defendant on 20 January 1992. At calendar call on 17 February 1992, counsel for plaintiff was approached in court by Attorney Barbara Morgenstern of Nichols, Caffrey, Hill, Evans & Murrelle, who informed counsel for plaintiff that she had been contacted by defendant and may be representing him at the trial scheduled for 20 February 1992. However, Ms. Morgenstern later telephoned plaintiff's counsel in the afternoon of 17 February 1992 and informed plaintiff's counsel that she would not be making an appearance on behalf of defendant at the scheduled trial.

On 20 February 1992, a trial was held at the Guilford County courthouse in High Point, North Carolina. Defendant did not appear or send counsel, although he had actual notice that the custody matter was to be heard.

TATARAGASI v. TATARAGASI

[124 N.C. App. 255 (1996)]

On 2 March 1992, Judge Morton entered an order awarding plaintiff custody of the two children and ordering that defendant not be allowed visitation or to go near plaintiff or the children. Judge Morton further directed law enforcement officers to arrest defendant if he made an attempt to take the children away from their mother. He also ordered that all records pertaining to the children and to any name change of the children or their mother be sealed. The order provided that defendant be served with a copy of the order under the North Carolina Rules of Civil Procedure. A copy of the order was mailed to defendant on 19 March 1992 by registered mail, return receipt requested. Defendant again refused to accept service. On 6 August 1992, Judge J. Bruce Morton received a letter from Ihsan Arslan, an attorney in Turkey, concerning the lawsuit and decision. Mr. Arslan requested that all further notices be sent in accordance with the rules of the Hague Convention.

Fourteen months later, on 21 October 1993, defendant, through counsel at the law firm of Nichols, Caffrey, Hill, Evans & Murrelle, filed a motion to set aside and vacate the 2 March 1992 order on the grounds that said orders of the trial court were invalid given plaintiff's failure to serve defendant with lawful process for the summons, complaint, and emergency custody order; and on the grounds that the district court in Guilford County improperly asserted jurisdiction while a custody action was pending in the Turkish court. Defendant's motion was amended on 1 December 1994 to correct any possible discrepancy which may have been created by the difference between the motion as originally filed and defendant's affidavit filed 2 December 1992. By order dated 8 May 1995, the motion was denied. Defendant appeals.

Prior to reaching the merits of this action, we must first address whether this appeal is properly before this Court. In deciding whether a trial court's order is appealable, we are required to determine whether the order represents a final judgment on the merits or whether it is interlocutory.

A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court. An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.

*Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). *See also* N.C. Gen. Stat. § 1A-1, Rule 54(a) (1990).

**[1]** In the case *sub judice*, the trial court denied defendant's motion to vacate and set aside its previous order which was, in effect, a final determination of the custody issue of the minor children. In denying defendant's motion, the court determined that the prior order stands; thus, no remaining issues were left to be determined. Plaintiff argues that because the trial judge allowed defendant to submit additional pleadings if he so desired, that the action was not a final judgment and was therefore interlocutory. We disagree. The previous order left no further action to be determined, accordingly, it was a final judgment on the merits. *See Janus Theatres of Burlington v. Aragon*, 104 N.C. App. 534, 410 S.E.2d 218 (1991). Thus, we now address the merits of the action.

Defendant first argues that the trial court erred in denying his motion to vacate and set aside the court's custody orders on the ground that there was insufficient service of process. Specifically, defendant contends that service of process was insufficient because service did not meet the requirements of the Hague Convention.

Both the United States and Turkey are signatories to the Hague Convention. "The Convention 'was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad.'" *Hayes v. Evergo Telephone Co.*, 100 N.C. App. 474, 476, 397 S.E.2d 325, 327 (1990) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 100 L. Ed. 2d 722, 730 (1988)). The Convention provides numerous methods for service of process in a foreign jurisdiction, including the establishment of a Central Authority by each member of the Convention to receive requests for service of process from other countries and to serve process in accordance with the internal law of the receiving nation. *See id. See also Pochop v. Toyota Motor Co., Ltd.*, 111 F.R.D. 464, 465 (S.D. Miss. 1986). In *Hayes*, this Court held that even though the appellee failed to send a request or documents to the designated Central Authority in Hong Kong, that their claim was not fatally flawed, because this was not the sole means by which to serve a defendant resident in another country. 100 N.C. App. 474, 397 S.E.2d 325. Article 10 of the Convention provides:

Provided the State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination[,]

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

20 U.S.T. 361, *reprinted in* 28 U.S.C.A. Fed. R. Civ. P. 4 (1992). Defendant contends and we agree that Turkey has stated its opposition to the methods of service of process pursuant to Article 10; therefore, Article 10(a) is not available to plaintiff since defendant resides in Turkey. *See Arco Electronics Control, Ltd. v. Core Intern.*, 794 F.Supp. 1144, 1146 (S.D. Fla. 1992).

[2] Plaintiff attempted to serve defendant pursuant to the Hague Convention, but failed to provide a translated copy of the documents as directed by the Turkish officials in order to obtain valid service in that action. A review of the record reveals that although plaintiff did not strictly comply with the procedures of the Hague Convention set forth to obtain service of process, she did make a good faith effort to comply with the requirements of the Hague Convention. There is also some evidence in the record to suggest that defendant refused to accept service. *See Lutes v. Alexander*, 421 S.E.2d 857, 865-66 (Va. Ct. App. 1992) (holding that where party attempted service "in every conceivable manner[,]" but was unsuccessful due to the husband's refusal to accept service, jurisdiction was not defeated by an arbitrary refusal to accept service).

In *Trask v. Service Merchandise Co., Inc.*, 135 F.R.D. 17 (D. Mass. 1991), the court held that a good faith effort to obtain service of process pursuant to the Hague Convention, allows a court to apply the more liberal standards of Rule 4 of the Rules of Civil Procedure in analyzing the propriety of service. Moreover, "where service has been attempted in good faith under the Convention, defects in the execution of such service [are] not intended under the Convention 'to

supersede the general and flexible scheme' of Rule 4." *Cooper v. Makita, U.S.A., Inc.*, 117 F.R.D. 16, 17-18 (D. Me. 1987) (citations omitted). Courts have additionally held that "despite the absence of proper service, there is no need to dismiss [a] case without first providing a reasonable opportunity to accomplish such proper service." *Trask*, 135 F.R.D. at 22 (plaintiff given forty-five days to perfect service); *see also Cooper*, 117 F.R.D. at 18 (providing plaintiff additional time to effect proper service where not in compliance with the Hague Convention); *Pochop*, 111 F.R.D. at 467 (allowing party time to serve process pursuant to requirements of Hague Convention).

[3] Defendant, however, also argues that service of process was insufficient even under Rule 4 of the North Carolina Rules of Civil Procedure. He contends that because the summons and complaint were addressed and dispatched by plaintiff's attorney rather than by the clerk of court, and because the record does not contain an affidavit or certificate addressed or mailed by the clerk of court as required by North Carolina General Statutes section 1A-1, Rule 4 (j3) (Cum. Supp. 1995), that service of process under Rule 4 was insufficient. *Greenup v. Register*, 104 N.C. App. 618, 620, 410 S.E.2d 398, 400 (1991) (finding that the requirements of Rule 4 "must be construed strictly and the prescribed procedure must be followed strictly. . . . Unless the requirements are met, there is no valid service"(citations omitted)). Thus, defendant argues that effective service of process was not obtained under Rule 4 of the Rules of Civil Procedure.

However, in child custody cases where actual notice has been received, service of process is proper notwithstanding a person other than the clerk's office mailing the process. *See Dunne v. Dunne*, 560 N.Y.S.2d 77 (N.Y. Fam. Ct. 1990). In *Dunne*, the court in circumstances similar to those in the instant action, held that where the plaintiff mailed the custody papers in violation of the statute, and the defendant received actual notice, "such service constitutes at most a mere irregularity and is not jurisdictional." *Id.* at 80. Thus, the *Dunne* court ruled that "[s]ervice was proper and the Court [found] that personal jurisdiction [had] been obtained." *Id.* "If at all possible, actual notice should be received by the affected persons; but efforts to impart notice in a manner reasonably calculated to give actual notice are sufficient when a person who may perhaps conceal his whereabouts, cannot be reached." Comment 5, UCCJA (citing *Mullane v. Central Hanover B. & T. Co.*, 339 U.S. 306, 94 L. Ed. 865 (1950); *Schroeder v. New York*, 371 U.S. 208, 9 L. Ed. 2d 255 (1962)).

In this action, it is unquestionable that defendant had actual notice of the Guilford County action. The record reflects that defendant's counsel Mr. Regan had knowledge of the suit; that defendant had contacted the law firm of Nichols, Caffrey, Hill, Evans & Murrelle about representation for this action, according to Attorney Barbara Morgenstern, who had stated that she was going to represent defendant, and then later stated that she would not be making an appearance on his behalf; and finally, that the attorney retained by defendant in Turkey had notice of the action, as shown by his ex parte communication with the trial court concerning the lawsuit. Thus, defendant had actual notice of the proceeding in Guilford County. Further, service of process was made on 10 January 1991 pursuant to Rule 4(j3) of the North Carolina Rules of Civil Procedure. It was accepted by defendant's housekeeper on 20 January 1991. *Gould Entertainment Corp. v. Bodo,* 107 F.R.D. 308, 310 (S.D.N.Y. 1985) (finding that service of process which was delivered to defendant's residence and was accepted by the maid was "reasonably calculated to give actual notice to [defendant] and thus [does] not offend the due process requirements of the federal constitution" (citation omitted)). Thus, the record sufficiently shows that service of process was effectively made. Therefore, this argument fails.

Defendant's second argument is that the trial court erred in denying his motion to vacate and set aside the custody orders in that the court did not have personal jurisdiction over him to make a custody determination. We disagree.

[4] Defendant argues that because service of process was improperly made, personal jurisdiction over him did not exist. *See Harris v. Harris,* 104 N.C. App. 574, 410 S.E.2d 527 (1991). However, as asserted previously, defendant had actual notice of the proceeding in Guilford County. The cases referenced by defendant to support his position are distinguishable from the instant action. *See Henson v. Henson,* 95 N.C. App. 777, 384 S.E.2d 70 (1989); *Copeland v. Copeland,* 68 N.C. App. 276, 314 S.E.2d 297 (1984). In *Henson* and *Copeland,* no attempt was made to serve process whereas in this action, numerous attempts were made to serve process and defendant had actual notice prior to the hearing on the matter. Moreover, pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), personal jurisdiction over defendant, the nonresident parent, is not required. *See Shingledecker v. Shingledecker,* 103 N.C. App. 783, 785, 407 S.E.2d 589, 591 (1991); *Hart v. Hart,* 74 N.C. App. 1, 7, 327 S.E.2d 631, 635 (1985).

A court of this State authorized to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if: (1) This state (i) is the home state of the child at the time of commencement of the proceeding. . . .

*Shingledecker*, 103 N.C. App. at 785, 407 S.E.2d at 591 (quoting N.C. Gen. Stat. § 50A-3(a)(1) (1989)). Thus, this argument is without merit.

**[5]** Defendant's next argument is that the trial court erred in denying his motion to vacate and set aside the court's custody orders in that the trial court did not have subject matter jurisdiction where a custody action was pending in another jurisdiction at the time that the instant action was filed. We disagree.

Defendant contends that because he initiated custody proceedings in Turkey before the Guilford County action was filed, that Guilford County should not have exercised subject matter jurisdiction in this case because the Turkish custody proceeding was already pending. Thus, he contends that under North Carolina General Statutes section 50A-6(a), Guilford County should not have exercised subject matter jurisdiction. *See* N.C. Gen. Stat. § 50A-6(a) (1989).

In determining jurisdiction in child custody cases, trial courts are required to follow the UCCJA. N.C. Gen. Stat. § 50A-1 *et seq.* (1989). Section 50A-6(a) provides in pertinent part that:

If at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction *substantially in conformity with this Chapter*, a court of this State shall not exercise its jurisdiction under this Chapter, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.

N.C.G.S. Stat. § 50A-6(a) (emphasis added). *See also Brewington v. Serrato*, 77 N.C. App. 726, 336 S.E.2d 444 (1985) (holding that where there is a prior or pending order from another state, North Carolina can exercise jurisdiction pursuant to North Carolina General Statutes section 50A-3 if the court of the other state did not exercise jurisdiction in conformity with the UCCJA).

Accordingly, we must determine whether Turkey exercised jurisdiction in substantial conformity with the UCCJA. The purpose of the UCCJA is to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being; . . . [and]

(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.

N.C. Gen. Stat. § 50A-1. Thus, the primary emphasis of the UCCJA is the "best interests of the child."

> The UCCJA marks a shift in the emphasis of policy in the area of child custody. The focus is no longer on what law a court should apply in resolving a custody dispute; instead the focus is on which court is best able to make the decision. The state with the maximum contact with the child will be the one to determine the case. This change indicates the UCCJA is definitely child-centered rather than parent-centered.

*Hart*, 74 N.C. App. at 9, 327 S.E.2d at 636 (quoting Comment, 4 Campbell L. Rev. 371, 376 (1982)). Furthermore,

(a) A court of this State authorized to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This State (i) is the home state of the child at the time of commencement of the proceeding, . . . or

(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence relevant to the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent . . . .

N.C. Gen. Stat. § 50A-3. *See Shingledecker*, 103 N.C. App. at 785, 407 S.E.2d at 591; *see also Hart*, 74 N.C. App. at 7, 327 S.E.2d at 635.

TATARAGASI v. TATARAGASI

[124 N.C. App. 255 (1996)]

In the instant case, the trial court found that North Carolina was the home state of the children; that it was in the best interests of the children that North Carolina assume jurisdiction; that plaintiff had significant connections with the State; and that there was substantial evidence relevant to the children's present and future care, protection, training and personal relationships. Moreover, the trial court found that defendant had repeatedly abused the children and plaintiff; thus, the trial court had jurisdiction on the basis of an emergency situation being present.

Defendant relies upon *Klont v. Klont*, 342 N.W.2d 549 (Mich. App. 1983), in support of his position that the trial court did not have jurisdiction. However, *Klont* is factually distinguishable from the instant case. In *Klont*, the foreign court's exercise of jurisdiction substantially conformed with the criteria of the UCCJA. The Turkish court's order did not discuss the best interests of the children, but instead talked about defendant's position and status in the community, the importance of Islam, circumcision and defendant's place in society. Therefore, Turkish law is not in conformity with the UCCJA, nor is it in conformity with the law of North Carolina. Thus, defendant's reliance on *Klont* is misplaced.

[6] Moreover, the trial court in this action had emergency jurisdiction. *See* § 50A-3(a)(3), which provides that a North Carolina court has jurisdiction to make a child custody determination if "[t]he child is physically present in this State and . . . it is necessary in an emergency to protect the child because the child had been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent[.]" Accordingly, the trial court did not err in denying defendant's motion to vacate and set aside the judgment on the grounds that the trial court did not have subject matter jurisdiction.

For all of the reasons discussed herein, the instant action is affirmed.

Affirmed.

Judges LEWIS and MARTIN, MARK D. concur.