ANTHONY HAMMOND, PLAINTIFF v. NAOKO HAMMOND, DEFENDANT

No. COA10-397

(Filed 1 March 2011)

**1. Child Custody and Support— personal jurisdiction— Japanese domestic law**

The trial court did not err in a child custody and child support case by denying defendant mother's motion to dismiss based on lack of personal jurisdiction even though defendant and the parties' children were in Japan. Defendant's due process rights were not offended because plaintiff father made a good faith effort to comply with Rule 4 and with the Hague Service Convention, translating the summons and forwarding his service request to the Central Authority of Japan within a reasonable time. Further, the Japanese clerk of court determined that service was proper under Japanese domestic law.

**2. Child Custody and Support— subject matter jurisdiction— Uniform Child Custody Jurisdiction and Enforcement Act—home state**

The trial court did not err in a child custody and child support case by denying defendant mother's motion to dismiss based on lack of subject matter jurisdiction even though defendant and the parties' children were in Japan. The trial court properly concluded under the Uniform Child Custody Jurisdiction and Enforcement Act that North Carolina was the home state of the parties' minor children at the commencement of the custody action.

**HAMMOND v. HAMMOND**

[209 N.C. App. 616 (2011)]

Appeal by Defendant from order entered 15 December 2009 by Judge L. Dale Graham in Iredell County District Court. Heard in the Court of Appeals 26 October 2010.

*Hamilton Moon Stephens Steele & Martin, PLLC, by L. Stanley Brown and Allison C. Pauls, for Defendant-appellant.*

*Anthony W. Hammond, Jr., pro se.*

HUNTER, JR., Robert N., Judge.

Defendant appeals an interlocutory order seeking a determination of whether the trial court erred by denying her Motion to Dismiss Plaintiff's Complaint asserting the trial court lacked personal jurisdiction and subject matter jurisdiction, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) and Rule 12(b)(2). After a careful review of the record, we affirm.

## I. Factual and Procedural Background

Anthony Hammond ("Plaintiff") and Naoko Hammond ("Defendant") are a married couple with three minor children, all born of the marriage. Defendant is a native of Japan, but lived in the United States for approximately 12 years before commencement of the action that is the subject of this appeal. The Hammonds met in Japan in 1994, moved together to Florida in 1996, and married in 1998. The couple relocated to Iredell County, North Carolina in February 2006 where Defendant gave birth to their third child.

On 16 May 2008, the Hammonds traveled to Japan and visited Defendant's family as they had done numerous times throughout the course of their marriage. Approximately three weeks after their arrival, the couple experienced marital difficulties and Defendant informed Plaintiff of her intent to remain permanently in Japan with their children.

Both parties subsequently retained Japanese attorneys and participated in a series of mediations arranged through the Japanese family court system. Unable to resolve their differences, Plaintiff returned to North Carolina and filed this action on 14 November 2008. Plaintiff's claims for relief include child custody, child support, and equitable distribution. Additionally, Plaintiff made motions for an interim distribution of the marital and divisible property; a temporary restraining order and preliminary injunction preventing Defendant

from disposing of any such property; a referral to alternative dispute resolution; and a motion for attorney's fees.

On 12 January 2009, Plaintiff applied to the Japanese Ministry of Foreign Affairs for service of his summons, complaint, and related documents upon Defendant at the address where Plaintiff contends Defendant resides: a residential-business complex allegedly shared by Defendant, her mother, and other family members. After forwarding the original summons to the Japanese Ministry of Foreign Affairs, Plaintiff had alias and pluries summonses issued on 13 January 2009, 17 March 2009, and 18 May 2009; these subsequent summonses were not forwarded to Japan for service. The Ministry of Foreign Affairs returned a proof of service certificate stating that service was made upon Defendant's mother at the address specified by Plaintiff on 22 April 2009.

On 24 September 2009, Plaintiff filed an Affidavit of Service averring that he effected service upon Defendant in accordance with article 5(a) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters. A proof of service certificate from the Japanese Ministry of Foreign Affairs was attached to the affidavit. In this affidavit, Plaintiff refers to this method of service as "Japanese certified mail."

On 1 October 2009, Defendant filed her Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure, asserting lack of subject matter jurisdiction, and Rule 12(b)(2), asserting lack of personal jurisdiction.

In support of her motion to dismiss for lack of personal jurisdiction, Defendant submitted an affidavit in which she alleged, *inter alia*, that although she was aware of the existence of the summons and complaint, she had not been served in accordance with Japanese law; that her mother was served with Plaintiff's summons and complaint at her work address, but her mother did not sign the receipt for the summons; that the address was not Defendant's residence nor her mother's residence; that her mother was not authorized to accept service on Defendant's behalf; and that Plaintiff's attempt to serve Defendant via "Japanese certified mail" was not the method of delivery required under Japanese law, which is known as "*tokubetsu sôtatsu.*" Additionally, Defendant alleged that she and Plaintiff moved to Japan with the intent to remain permanently and after their arrival separated due to marital difficulties.

## HAMMOND v. HAMMOND

[209 N.C. App. 616 (2011)]

In support of her motion to dismiss for lack of subject matter jurisdiction, Defendant submitted an affidavit in which she alleged that North Carolina was not the "home state" of the couple's children, as defined by section § 50A-102(7) of our General Statutes, in that the children had not lived in North Carolina for six consecutive months immediately preceding the commencement of Plaintiff's custody action. Defendant alleged the definition of "home state" required the children to have resided in the state from 14 May 2008 to 14 November 2008. Because the children left North Carolina on 16 May 2008, Defendant contends, North Carolina cannot qualify as their home state. Defendant further alleged that Japan was the children's home state because Defendant commenced a custody action in Japan on 24 April 2009; Japan is a "state" under section 50A-105(a) of our General Statutes; and the children have resided with Defendant in Japan for more than six consecutive months immediately preceding commencement of the Japanese custody action.

A hearing on Defendant's motion was held 6 November 2009. Neither party was present, but both were represented by counsel. Plaintiff's former counsel, Mr. T. Michael Godley, testified as to Plaintiff's efforts to effect service upon Defendant.

In its 15 December 2010 order, the trial court made, *inter alia*, the following findings of facts:

2. The parties and their children lived together in Iredell County, North Carolina from February, 2006 until May 16, 2008.

3. The parties and the minor children went to Japan on or about May 16, 2008. Plaintiff believed this was for a temporary visit. Upon their arrival in Japan the parties resided with Defendant's mother in a residential and business compound owned by Defendant's uncle. This complex was located at 1048 Shimoyoshida Fujiyonshida, Yamanashi, Japan 403-0004. The complex contains at least 3 separate living quarters as well as office space. All residences and offices in the complex shared a common address of 1048 Shimoyoshida Fujiyonshida, Yamanashi, Japan 403-0004.

4. The Defendant, the three minor children, Defendant's mother and Plaintiff occupied a separate residence within this residential business complex after their arrival.

5. Three weeks after their arrival in Japan, Defendant informed Plaintiff that she intended to remain in Japan permanently.

Shortly thereafter, Plaintiff was requested to leave the premises which he did. Defendant, the minor children and her mother continued to reside in the mother's residence at [the] 1048 Shimoyoshida address.

6. Plaintiff's former attorney, Michael Godley, applied on January 12, 2009 to the Japanese Ministry of Foreign Affairs for service of the Summons, Complaint and accompanying documents upon Defendant at the 1048 Shimoyoshida address.

7. Plaintiff, through his attorney Mr. Godley, had retained two attorneys in Japan to assist with service of process so as to comply with the Japanese service requirements.

8. The Japanese Ministry of Foreign Affairs forwarded this request along with Plaintiff's documents to Kofu District Court in Kofu City, Yamanachi [sic].

9. These documents, translated into Japanese, were received at Defendant's residence and were accepted by Defendant's mother on April 22, 2009.

10. Defendant was residing at 1048 Shimoyoshida Fujiyonshida, Yamanashi, Japan 403-0004 at the time service of process was completed on April 22, 2009.

11. This action was filed on November 14, 2008 in the Office of Iredell County Clerk of Superior [C]ourt.

Based upon these findings, the trial court concluded as a matter of law: "[t]he service of the summons, complaint and accompanying documents upon Defendant in Japan was proper. The Defendant has actual and legal notice of these proceedings in accordance with Rule 4 of the Rules of Civil Procedure." Additionally, the trial court concluded that North Carolina "was and is the 'home state'" of the Hammond's minor children as defined by the Uniform Child-Custody Jurisdiction and Enforcement Act; and the trial court could properly exercise personal jurisdiction over Defendant and subject matter jurisdiction over Plaintiff's claims. The trial court, accordingly, denied Defendant's Motion to Dismiss. Defendant timely filed notice of appeal and filed a motion to stay a 27 April 2010 hearing for child support and interim distribution, pending resolution of her appeal. The trial court granted Defendant's motion to stay as to all proceed-

ings and concluded the 15 December 2009 Order denying Defendant's Motion to Dismiss affected a substantial right.[1]

## II. Analysis

Jurisdiction in this Court over an interlocutory order is proper where the appeal is from the denial of a motion to dismiss for lack of personal jurisdiction. N.C. Gen. Stat. § 1-277(b) (2009); *Deer Corp. v. Carter*, 177 N.C. App. 314, 321, 629 S.E.2d 159, 165-66 (2006). Upon review of a trial court's ruling as to personal jurisdiction over a party, this Court " 'considers only whether the findings of fact by the trial court are supported by competent evidence in the record; . . . [w]e are not free to revisit questions of credibility or weight that have already been decided by the trial court.' " *Carter*, 177 N.C. App. at 321, 629 S.E.2d at 165 (quoting *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694-95, 611 S.E.2d 179, 183 (2005)) (internal quotation marks omitted). Further, "[i]f the findings of fact are supported by competent evidence, we conduct a *de novo* review of the trial court's conclusions of law and determine whether, given the facts found by the trial court, the exercise of personal jurisdiction would violate [the] defendant's due process rights." *Id.* at 321-22, 629 S.E.2d at 165.

### A. Personal Jurisdiction

[1] First, Defendant argues the trial court erred in denying her motion to dismiss for lack of personal jurisdiction as Plaintiff failed to effect service of process in accordance with North Carolina law and the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, November 15, 1965, 20 U.S.T. 361 (hereinafter "Hague Service Convention" or "Convention"). We disagree.

"The purpose and aim of the service of the summons are to give notice to the party against whom the proceeding or action is commenced, and any notification which reasonably accomplishes that purpose answers the claims of law and justice." *Jester v. Steam Packet Co.*, 131 N.C. 54, 55, 42 S.E. 447, 447 (1902). It is "[t]he legislative power of the State in which the action is commenced [that] is charged

---

1. On 25 August 2010, Defendant filed a motion requesting that we strike Plaintiff's brief or, in the alternative, strike portions of his brief. While we did not strike Plaintiff's brief in its entirety, we allow Defendant's motion and strike those pages that contain evidence not included in the record. Accordingly, in reaching our decision, we have not relied upon any portion of Plaintiff's brief that contains evidence not included in the record.

with the duty and responsibility of prescribing the rules governing in such matters, and its action is not reviewable, unless it should plainly appear that the notice did not amount to 'due process of law.' " *Id.*

For actions filed in North Carolina, Rule 4 of the North Carolina Rules of Civil Procedure establishes the requirements for service of process upon a defendant. N.C. Gen. Stat. § 1A-1, Rules 3(a), 4 (2009). When serving a defendant in a foreign country, we begin our inquiry into the validity of service with Rule 4(j3).[2] W. Mark C. Weidemaier, Univ. N.C. Sch. Gov't, *International Service of Process Under the Hague Convention*, Admin. Just. Bull. No. 2004/07, Dec. 2004, at 3. Rule 4(j3) provides several means to effect service of process in foreign countries. N.C. Gen. Stat. § 1A-1, Rule 4(j3). Relevant to the instant appeal, Rule 4(j3)(1) states, in part, that service may be effected upon an individual in a foreign county "[b]y any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." *Id.* § 1A-1, Rule 4(j3)(1).

As Japan and the United States are signatories to the Hague Service Convention, its procedures must be followed "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention, *supra*, at art. 1; *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 100 L. Ed. 2d 722, 730 (1988). In *Schlunk*, the United States Supreme Court concluded that in a legal action it is the law of the forum state that determines when there is an "occasion to transmit" a document "for service abroad"; thus, it is the law of the forum state that determines when the Hague Service Convention applies. *Schlunk*, 486 U.S. at 700, 100 L. Ed. 2d at 731. As noted above, Rule 4(j3) permits service of a defendant in foreign country by means authorized by the Convention. N.C. Gen. Stat. § 1A-1, Rule 4(j3)(1). Thus, the Convention and our Courts' interpretations of its provisions control the analysis of personal jurisdiction in the instant appeal. *E.g.*, *Tataragasi v. Tataragasi*, 124 N.C. App. 255, 263, 477 S.E.2d 239, 243 (1996) (applying the Hague Service Convention requirements for service of process in a custody proceeding where the defendant father resided in Turkey), *disc. review denied*, 345 N.C. 760, 485 S.E.2d 309 (1997).

---

2. Unless otherwise noted, our references to "Rule" in this opinion refer to the North Carolina Rules of Civil Procedure, N.C. Gen. Stat. § 1A-1 (2009).

The Hague Service Convention "was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Schlunk*, 486 U.S. at 698, 100 L. Ed. 2d at 730; *Hayes v. Evergo Tel. Co., Ltd.*, 100 N.C. App. 474, 476, 397 S.E.2d 325, 327 (1990). To this end, the Convention requires each signatory state to establish a Central Authority to facilitate the service of documents from foreign countries. Hague Service Convention, *supra*, at art. 2. When such requests for service are received, article 5 of the Convention requires the Central Authority to serve the accompanying documents in a manner that comports with the receiving country's domestic laws. *Id.* at art. 5; *Schlunk*, 486 U.S. at 699, 100 L. Ed. 2d at 730. After service is effected, the Central Authority is required to complete a proof of service certificate that states the manner in which the documents were served, the place and date of service, and the person on whom the documents were served; this certificate must then be returned to the party that requested service. Hague Service Convention, *supra*, at art. 6; *Schlunk*, 486 U.S. at 699, 100 L. Ed. 2d at 730.

In Japan, service (*sôtatsu*) is a judicial function, performed exclusively by Japanese courts; litigants may not effect service as permitted in the United States. Takaaki Hattori & Dan Fenno Henderson, *Civil Procedure in Japan* § 7.07[7][a], at 7-22 (2nd ed. 2009); G. Brian Raley, *A Comparative Analysis: Notice Requirements in Germany, Japan, Spain, the United Kingdom and the United States*, 10 Ariz. J. Int'l & Comp. L. 301, 317 (1993). The clerk of court prescribes the method of service through the postal service or through a bailiff. Hattori & Henderson, *supra*, § 7.07[7][a], at 7-22. A special stamp affixed by the clerk to the envelope containing the legal documents served evidences service executed via the mail (*tokubetsu sôtatsu*). *Id.*

Under Japanese domestic law, service of process in Japan may also be effected by personal service (*kôfu sôtatsu*), substituted service (*hojû sôtatsu*), by a registered mail carrier specified by the Japanese Supreme Court, by public notice (*kôji sôtatsu*), or even by leaving the documents at the place service should be made when service is unjustifiably refused by the addressee (*sashioki sôtatsu*). *Id.* § 7.07[7][b] to [e], [g], at 7-22 to 7-25. Each method entails its own procedural requirements specified in the Japanese Code of Civil Procedure. *See id.*

Pursuant to article 2 of the Convention, Japan designated the Ministry of Foreign Affairs as the Central Authority to receive requests for service from abroad. Raley, *supra*, at 316; Hague Service Convention, *supra*, at art. 2. The Convention also prescribes the manner of proof of service, which is to be completed by the Central Authority. Hague Service Convention, *supra*, at arts. 6, 21. As required by article 21(b), Japan has designated its district courts as the sole authority competent to complete the proof of service certificate required under article 6. Hattori & Henderson, *supra*, § 15.02[1], at 15-7 n.13.

In the instant case, Defendant argues that the trial court lacked personal jurisdiction over her as Plaintiff's attempt to effect service of process was not executed in accordance with the Hague Service Convention or with North Carolina law. Specifically, Defendant contends that service was not proper for three reasons.

First, Defendant argues Plaintiff failed to assert in his Affidavit of Service that the pleadings were served using the special mail service, *tokubetsu sôtatsu*, or to include any evidence of such service. Rather, Defendant insists, Plaintiff sent the documents via certified mail, an unauthorized method of service under the Hague Service Convention for service of process in Japan.

As indicated above, the trial court found that Plaintiff applied to the Japanese Ministry of Foreign Affairs for service of the Summons, Complaint, and related documents upon Defendant; the Japanese Ministry of Foreign Affairs then forwarded these documents to the district court in Yamanashi, Japan; and the documents were served upon Defendant's mother at Defendant's residence in Yamanashi. These findings are supported by Plaintiff's Affidavit of Service averring to his request for service in conformity with article 5(a) of · the Hague Service Convention; by a copy of his request for service to the Japanese Ministry of Foreign Affairs, submitted on the request form approved under the Convention; and by the proof of service certificate returned by the Ministry of Foreign Affairs indicating the documents were served by the clerk of court in accordance with article 5(a) of the Convention.

Although Defendant filed an affidavit countering Plaintiff's averments, and both parties were heard at the hearing on Defendant's motion to dismiss, the trial court found the facts to be as Plaintiff alleged. Because we conclude the findings of fact are supported by

## HAMMOND v. HAMMOND

[209 N.C. App. 616 (2011)]

competent evidence, they are binding upon this court.[3] *Fungaroli v. Fungaroli*, 51 N.C. App. 363, 367, 276 S.E.2d 521, 524, *disc. review denied*, 303 N.C. 314, 281 S.E.2d 651 (1981) ("The trial judge's findings of fact when supported by competent evidence are conclusive upon this Court even when there is conflict in the evidence.").

Second, Defendant argues that service was improper because the summons, complaint, and related documents were served upon Defendant's mother, not upon Defendant directly. We disagree.

Despite Defendant's contentions otherwise, direct service upon a defendant is not the only means of service permitted under Japanese law. *See* Japanese Code of Civil Procedure (*Minji soshô-hô*), Law No. 109, arts. 103, 105, 106, 107, 110 (1996) (amended 2007) (authorizing direct service, substituted service, service where defendant is found, service by registered mail, and service by publication).[4] Under Japanese law, when a defendant cannot be served personally, substituted service is permissible upon an employee or occupant of the defendant's domicile, residence, or place of business provided that person is "capable of understanding that service is being made." Hattori & Henderson, *supra*, § 7.02[7][c], at 7-24.

Here, the trial court found that Defendant and her mother shared a residence in a residential-business compound located at 1048 Shimoyoshida Fujiyonshida, Yamanashi, Japan 403-0004; that Defendant's mother was served at this address on 22 April 2009; and that Defendant was residing at this address on the date of service.

The record reveals that these findings are supported by Plaintiff's affidavit as well as an affidavit from an acquaintance of the Hammond family who avers he is a Japanese citizen living in Japan; that the Hammonds resided at 1048 Shimoyoshida Fujiyonshida, Yamanashi, Japan 403-0004 during their multiple visits to Japan over the years; and that Defendant's mother lives at this same address. Furthermore, the Japanese clerk of court determined that service was proper as evidenced by the completed certificate of service. Had proper service not been possible, the Hague Service Convention requires the clerk to return the documents to Plaintiff explaining the circumstances that

---

3. We are not persuaded by Defendant's insistence that Plaintiff's reference to this method of service as "Japanese certified mail" is evidence that Plaintiff failed to use a proper form of service. Plaintiff's counsel explained he merely referred to the method of delivery as "Japanese certified mail" for lack of a better description.

4. For an English translation see Takaaki Hattori & Dan Fenno Henderson, *Civil Procedure in Japan* (2nd ed. 2009).

prevented service upon Defendant. Hague Service Convention, *supra*, at art. 6. Additionally, we note that courts of other jurisdictions have found the " 'return of a completed certificate of service is prima facie evidence that the [Central] Authority's service' was made in compliance with that country's law." *In re S1 Corp. Sec. Litig.*, 173 F. Supp. 2d 1334, 1344 (N.D. Ga. 2001) (quoting *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1390 (8th Cir. 1995)).

Through his counsel, Plaintiff asserted at the hearing on Defendant's Motion to Dismiss that this proof of service certificate states that service was effected on defendant's mother who "resides with addressee" and made in compliance with article 5(a) of the Convention. Defendant acknowledges that her mother was served at her place of work, but insists the address is not her mother's residence. This conflict in the evidence is not for this Court to resolve; the trial court's findings are supported by competent evidence and they are thus binding upon this Court. *Fungaroli*, 51 N.C. App. at 367, 276 S.E.2d at 524.

Third, Defendant argues service was ineffective because the summons served was dormant upon receipt. We disagree.

Plaintiff's original summons was issued on 14 November 2008. After forwarding the original summons to the Japanese Ministry of Foreign Affairs on 12 January 2009, Plaintiff had alias and pluries summonses issued on 13 January 2009, 17 March 2009, and 18 May 2009; there is no evidence that these subsequent summonses were forwarded to Japan for service. The proof of service certificate from the Ministry of Foreign Affairs states that service was made upon Defendant's mother at the address specified by Plaintiff on 22 April 2009—one hundred and fifty-eight days after issuance.

In support of her argument, Defendant cites this Court's ruling in *Huggins v. Hallmark Enterprises, Inc.*, 84 N.C. App. 15, 19, 351 S.E.2d 779, 781-82 (1987), in which we held the trial court could not exercise personal jurisdiction over a defendant served with a dormant summons. We observed in *Huggins* that when the sheriff's office returned the plaintiff's summons unserved (within the time prescribed by Rule 4(c)) the summons was dormant and unserveable, but capable of being revived through endorsement of the summons or issuance of an alias or pluries summons under Rule 4(d). *Id.* at 18-19, 351 S.E.2d at 781. The plaintiff in *Huggins*, however, did not revive the original summons, but served the dormant summons upon the

defendant's registered agent. *Id.* Consequently, we concluded the defendant was not subject to the jurisdiction of the trial court by service of the original summons. *Id. Huggins* is distinguishable, however, because of the plaintiff's failure to revive the summons under Rule 4(d), and because service upon the defendant was executed in North Carolina, not in a foreign country. *Id.* at 18, 351 S.E.2d at 781.

As described above, Rule 4(j3) and the Hague Service Convention control our analysis in the instant case. Because the United States and Japan are signatories to the Hague Service Convention and the instant case is a civil case in which "there is occasion to transmit a judicial or extrajudicial document for service abroad," the requirements of the Convention control service of process upon Defendant. Hague Service Convention, *supra*, at art. 1; *Schlunk*, 486 U.S. at 699, 100 L. Ed. 2d at 730; N.C. Gen. Stat. § 1A-1, Rule 4(j3)(1). Moreover, "[b]y virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Schlunk*, 486 U.S. at 699, 100 L. Ed. 2d at 730. Thus, the mandates of Rule 4 must yield where they conflict with service as prescribed by the Convention.

Article 5 of the Hague Service Convention requires the Central Authority of the state addressed to execute requests for service in a manner that comports with that state's domestic laws. Hague Service Convention, *supra*, at art. 5; *Schlunk*, 486 U.S. at 699, 100 L. Ed. 2d at 730. The Convention does not, however, require each contracting state's Central Authority to establish a time limit for executing service requests. 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1133 (3d ed. 2002). In fact, article 15 of the Convention provides that a default judgment may be entered against a defendant when no certificate of service has been returned, but only after a six month period has elapsed since transmission of the documents to the Central Authority. Hague Service Convention, *supra*, at art. 15.

More specifically, the domestic laws of Japan require that a more relaxed time frame than that provided in Rule 4(c) must be permitted in order to effect service of process upon Defendant. Our review of the Japanese Code of Civil Procedure reveals no time limit for service of process upon a defendant; nor does Defendant cite to such a limitation. The Permanent Bureau of the Hague Conference on Private International Law, the intergovernmental organization

responsible for the adoption of the Hague Service Convention, periodically surveys signatories to the Convention on the practical operation of the Convention including the average time required to execute service requests. In response to questions by the Permanent Bureau in 2008 as to the timeliness of service requests received by the state's Central Authority, the Japanese delegation replied that Japanese domestic law does not require judicial and extrajudicial documents be served within a specific time. Permanent Bureau, Hague Conference on Private International Law, *Synopsis of Responses to the Questionnaire of July 2008 Relating to the Hague Convention of 15 November 1965 on the Service Abroad of the Judicial and Extrajudicial documents in Civil or Commercial Matters* 111-12, 2009, *available at* http://www.hcch.net (Conventions, Hague Service Convention, Questionnaires & Responses). The Permanent Bureau also reports that the average time for execution of a service request by the Japanese Ministry of Foreign Affairs is approximately four months. Permanent Bureau, Hague Conference on Private International Law, http://www.hcch.net (Authorities, Japan—Central Authority & Practical Information) (last updated May 15, 2009).

Given that the ability to effect service of process in Japan is exclusively a function of the Japanese judiciary[5] (*see* Hattori & Henderson, *supra*, § 7.02[7][a], at 7-21), Plaintiff has no practical means to effect service upon Defendant within the 60-day time constraint of Rule 4(c), creating a conflict between our General Statutes and the Convention. *See* N.C. Gen. Stat. § 1A-1, Rule 4(c) (2009). Therefore, Rule 4(c)'s requirement of service of the summons within 60 days after its issuance does not control Plaintiff's service. Rather, the requirements of Rule 4 must be harmonized with the Hague Service Convention while preserving Defendant's due process rights.

Additionally, Rule 4(d) permits continuation of an action when a "defendant in a civil action is not served within the time allowed for service" by issuance of an alias or pluries summons anytime within two years of the issuance of the original summons or after a prior

---

5. The Hague Service Convention permits a contracting state to serve judicial documents on persons abroad through the requesting state's diplomatic and consular agents, unless the state in which service is to be made objects to this form of service. Hague Service Convention, *supra*, at art. 8. While Japan has, to date, expressed no opposition to diplomatic and consular service under article 8 of the Convention, the Code of Federal Regulations prohibits such service by the United States Foreign Service, except in limited circumstances that do not apply here. *See* 22 C.F.R. § 92.85 (2009).

alias or pluries summons when serving a defendant outside of the United States. N.C. Gen. Stat. § 1A-1, Rule 4(d); *Roshelli v. Sperry*, 63 N.C. App. 509, 511-12, 305 S.E.2d 218, 219, ("The purpose of Rule 4(d) is only to keep the action alive by means of an endorsement on the original summons or by issuance of an alias or pluries summons in situations where the original, properly directed summons was not yet served."), *disc. review denied*, 309 N.C. 633, 308 S.E.2d 716 (1983). Plaintiff abided by Rule 4(d) in that he had an alias summons issued on 13 January 2009, and pluries summonses issued on 17 March 2009 and 18 May 2009. While these summonses were issued more frequently than is required, Rule 4(d) permits additional alias and pluries summonses to be issued "*at any time within two years* of the issuance of the original summons" or alias or pluries summons to keep the action alive. N.C. Gen. Stat. § 1A-1, Rule 4(d) (emphasis added).

As the North Carolina Rules of Civil Procedure are similar to the Federal Rules of Civil Procedure, we find interpretations of the Federal Rules by other jurisdictions helpful to our analysis. *See Sutton v. Duke*, 277 N.C. 94, 101, 176 S.E.2d 161, 165 (1970) ("[S]ince the federal and, presumably, the New York rules are the source of NCRCP we will look to the decisions of those jurisdictions for enlightenment and guidance . . . ."). Rule 4 of the North Carolina Rules of Civil Procedure approves of the Hague Service Convention for service of foreign defendants, as does Rule 4 of the Federal Rules. Fed. R. Civ. P. 4(f). Under the Federal Rules, however, the time limit prescribed for service of a summons under Rule 4(m) does not apply when serving a defendant in a foreign country. Fed. R. Civ. P. 4(m); Wright & Miller, *supra*, § 1134 ("Because amended Rule 4(f)(1) specifically refers to the Hague Convention as among the permissible means of service of process in a foreign country, service made pursuant to that treaty, explicitly falls within the foreign service exception to the 120-day time limit for completing process set out in amended Rule 4(m) . . . ."); *see also BDL Int'l v. Sodetal USA, Inc.*, 377 F. Supp. 2d 518, 521 n.4 (D.S.C. 2005) ("While it governs domestic entities, Rule 4(m)'s time limit does not apply to foreign individuals or corporations."); *Young's Trading Co. v. Fancy Import, Inc.*, 222 F.R.D. 341, 343 (W.D. Tenn. 2004) (noting Rule 4(m) 120-day limit did not apply to service of the defendant in Korea); *In re S1 Corp. Sec. Litig.*, 173 F. Supp. 2d at 1343 (noting "service pursuant to Rule 4(f) is not subject to the 120 day period of Rule 4(m) and the trend of courts is to find that the 120 day period does not apply even if the plaintiff makes no attempt to serve within the period").

Rule 4(j3) of the North Carolina Rules of Civil Procedure emphasizes actual notice over strict formalism by permitting service under the Hague Service Convention as an "internationally agreed *means reasonably calculated* to give notice," N.C. Gen. Stat. § 1A-1, Rule 4(j3)(1) (emphasis added)—a means of service to which the Convention does not prescribe a time limit other than that it be made in "sufficient time." Hague Service Convention, *supra*, art. 1. In *Tataragsi*, we recognized that a plaintiff's good faith effort to effect service under the Hague Service Convention "allows a court to apply the more liberal standards of Rule 4" when "analyzing the propriety of service." 124 N.C. App. at 263, 477 S.E.2d at 243. As one federal court noted, the federal Rule 4

> stresses actual notice, rather than strict formalism. There is no indication from the language of the Hague [Service] Convention that it was intended to supercede [sic] this general and flexible scheme, particularly where no injustice or prejudice is likely to result to the party located abroad, or to the interests of the affected signatory country. The Hague [Service] Convention should not be construed so as to foreclose judicial discretion when such discretion needs to be exercised. In this instance, plaintiff has, in good faith, attempted to abide by the provisions of the Hague [Service] Convention.

*Fox v. Regie Nationale des Usines Renault*, 103 F.R.D. 453, 455 (W.D. Tenn. 1984) (internal citations omitted) (refusing to fault the plaintiff for a defect in service made by the Central Authority of France and concluding service was valid). Similarly, we conclude that when a plaintiff demonstrates a good faith effort to effect service upon a foreign defendant under the Hague Service Convention pursuant to Rule 4(j3) of the North Carolina Rules of Civil Procedure, the trial court is permitted to exercise discretion in finding service valid where the circumstances presented would not offend the defendant's due process rights.

Here, we find Plaintiff has made a good faith effort to comply with Rule 4 and with the Hague Service Convention, translating the summons and forwarding his service request to the Central Authority of Japan within a reasonable time. The Japanese Ministry of Foreign Affairs effected service in compliance with Japanese domestic law—while Plaintiff kept his action alive through the issuance of alias and pluries summonses pursuant to Rule 4(d)—and Defendant received actual notice of Plaintiff's action as evidenced by her Motion to

Dismiss. We conclude the trial court's exercise of personal jurisdiction over Defendant will not offend her due process rights and the trial court did not err in denying her Motion to Dismiss for lack of personal jurisdiction.

## B. Subject Matter Jurisdiction

[2] Defendant also argues that the trial court erred in denying her Motion to Dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure. Specifically, Defendant contends that the trial court cannot exercise jurisdiction over Plaintiff's child-custody action because North Carolina is not the children's "home state" as defined by the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified in our General Statutes as Chapter 50A, sections 50A-101 to -317. We disagree.

On review of a trial court's denial of a motion to dismiss for lack of subject matter jurisdiction, the lower court's findings of fact are binding on this Court when supported by competent evidence; we review its conclusions of law *de novo. Burton v. Phoenix Fabricators & Erectors, Inc.*, 194 N.C. App. 779, 782, 670 S.E.2d 581, 583, *disc. review denied*, 363 N.C. 257, 676 S.E.2d 900 (2009).

As no court has previously entered a custody order pertaining to the Hammond's children, Plaintiff's action seeks an initial child-custody determination. N.C. Gen. Stat. § 50A-102(8) (2009). Section 50A-201 of our General Statues provides four alternative bases by which the district court may establish subject matter jurisdiction to enter an initial child-custody determination. N.C. Gen. Stat. § 50A-201 (2009). In the instant case, the trial court concluded subject matter jurisdiction was proper on the basis that North Carolina "was and is the 'home state' " of the Hammond's children under the UCCJEA. Accordingly, our discussion is limited to the determination of the children's "home state," and we do not address the alternative bases for jurisdiction under section 50A-201.

Section 50A-201(a) provides, in part, that a trial court may establish jurisdiction to make an initial child-custody determination, if

> [t]his State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State.

N.C. Gen. Stat. § 50A-201(a)(1) (2009). The "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." *Id.* § 50A-102(7). Furthermore, "[a] period of temporary absence of any of the mentioned persons is part of the period." *Id.*

Thus, section 50A-201(a)(1) provides two scenarios in which North Carolina may qualify as a child's home state: first, when "this State *is* the home state" on the date of the commencement of the custody action; second, when this state "*was* the home state" within the six months preceding commencement of the custody action. *Id.* § 50A-201(a)(1) (emphasis added). Both scenarios also require the child be absent from North Carolina and that a parent or person acting as such still resides in the state. *Id.* Although there is no specific finding of fact in the trial court's order regarding the father's residency in this state, no party contests that Plaintiff still resides in North Carolina. For the reasons discussed below, we conclude North Carolina qualifies as the home state of the Hammond's children under both scenarios permitted by section 50A-201(a)(1).

Defendant argues that the trial court failed to make sufficient findings regarding the residence of the children for the six months immediately before the commencement of the action to support its conclusion that North Carolina is the home state of the Hammond's children. We disagree.

As quoted above, the trial court found that the Hammonds and their children lived together in Iredell County for more than two years before their departure for Japan on 16 May 2008; that Plaintiff believed the family's visit to Japan was a temporary visit; that Defendant informed Plaintiff of her intentions to remain permanently in Japan, with their children, weeks after their arrival; and that Plaintiff filed this action on 14 November 2008. The record reveals these findings are supported by competent evidence including Plaintiff's and Defendant's affidavits. Plaintiff contends in his affidavit that the family's last trip to Japan was not intended to be permanent as the family had taken many temporary trips to Japan in order to visit Defendant's family; that shortly before leaving he applied for a job in North Carolina; and that he and Defendant had jointly enrolled their children in private school for the following school year and had paid the tuition in full. Defendant does not address her husband's assertion that both parties enrolled the chil-

dren in private school for the following school year. Additionally, her statement as to when she told her husband she intended to remain permanently in Japan is vague, and it is reasonable to interpret the statement to indicate she did not tell her husband of her intent to remain in Japan until after they arrived in Japan. In her appellate brief, Defendant contends that she told her husband of her intention to remain in Japan only after their arrival in that country. As indicated in its findings, the trial court believed the facts as set forth by Plaintiff and, as they are supported by competent evidence, the findings are binding upon this Court. "[W]e are not free to revisit questions of credibility or weight that have already been decided by the trial court." *Carter*, 177 N.C. App. at 321, 629 S.E.2d at 165-66 (quotations marks omitted).

Defendant also insists that because the children did not live in this state for six consecutive months immediately before Plaintiff filed this action, North Carolina cannot be the children's home state. We disagree.

Under the UCCJEA, the "home state" definition permits a court to include a temporary absence of a parent or child from the state within the six months before the filing of the custody action as time residing in North Carolina. N.C. Gen. Stat. § 50A-102(7). This Court has held that the proper method for determining whether an absence from the state is a temporary absence is by assessing the totality of the circumstances. *Chick v. Chick*, 164 N.C. App. 444, 449, 596 S.E.2d 303, 308 (2004). In *Chick*, we noted the totality of the circumstances test encompasses the length of the absence and the intent of the parties. *Id.* at 450, 596 S.E.2d at 308. The test also permits greater flexibility than other tests by allowing for the "consideration of additional circumstances that may be presented in the multiplicity of factual settings in which child custody jurisdictional issues may arise." *Id.*

In the instant case, we conclude the children's absence from North Carolina is a temporary absence. Our conclusion is supported by the residency of the Hammond's children in North Carolina for over two years before their departure to Japan, coupled with the evidence of Plaintiff's intent that he and his family would return to our state. We recognize the absence of the children from North Carolina is for almost the entire six months before the commencement of this action. This Court, however, has previously found absences of similar length to be temporary in nature, especially when a lengthy residency in North Carolina preceded the absence. *See Schrock v.*

*Schrock*, 89 N.C. App. 308, 311, 365 S.E.2d 657, 659 (1988) (concluding an absence from North Carolina for four of the six months immediately before the filing of the custody action was a temporary absence); *Pheasant v. McKibben*, 100 N.C. App. 379, 384, 396 S.E.2d 333, 336 (1990) (concluding children's absence from North Carolina, pursuant to a temporary custody decree, for all but seven weeks of the six months immediately before the filing of the custody action was a temporary absence).

Defendant further argues the trial court erred in concluding as a matter of law that North Carolina "was and is the 'home state' " of the Hammond's children. In support of this argument, Defendant relies upon an apparent misreading of our General Statutes' definition of "home state." Defendant cites the definition of "home state" in section 50A-102(7) and insists that because the children have lived in Japan since 16 May 2008 they had not lived in North Carolina "for at least six consecutive months immediately before the commencement of [the] child-custody proceeding" on 14 November 2008. N.C. Gen. Stat. § 50A-102(7). Defendant's reliance is misplaced for two reasons: her argument ignores the second of the two scenarios prescribed by section 50A-201(a) for establishing this State as the home state; and ignores that section 50A-201(a), not 50A-102(7), is the exclusive basis for establishing jurisdiction for a child-custody proceeding in North Carolina pursuant to section 50A-201(b). N.C. Gen. Stat. § 50A-201(b) (2009) ("Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this State.").

Were we to adopt Defendant's interpretation of the home state analysis we would impermissibly render the second scenario in section 50A-201(a) to be surplusage. *See Domestic Elec. Service, Inc. v. City of Rocky Mount*, 285 N.C. 135, 143, 203 S.E.2d 838, 843 (1974) ("The presumption is that no part of a statute is mere surplusage, but each provision adds something which would not otherwise be included in its terms."). Adhering to a basic tenant of statutory construction, we must read sections 50A-102(7) and 50A-201(a) *in pari materia*. *Barnes v. Erie Ins. Exch.*, 156 N.C. App. 270, 278, 576 S.E.2d 681, 686, ("Statutes *in pari materia*, although in apparent conflict or containing apparent inconsistencies, should, as far as reasonably possible, be construed in harmony with each other so as to give force and effect to each . . . ."), *disc. review denied*, 357 N.C. 457, 585 S.E.2d 382 (2003) (internal citations and quotations marks omitted). Thus, Defendant's argument implicitly restricting the "home state" to that

HAMMOND v. HAMMOND

[209 N.C. App. 616 (2011)]

state in which the children resided at the commencement of the proceeding is without merit.

We find further support for our conclusion in case law decided under the predecessor to the UCCJEA—the UCCJA, the Uniform Child Custody Jurisdiction Act. N.C. Gen. Stat. §§ 50A-1 to 50A-25 (repealed Oct. 1, 1999); 1999 N.C. Sess. 525. Under the UCCJA, this Court held in *Hart v. Hart*, 74 N.C. App. 1, 7, 327 S.E.2d 631, 635 (1985), that North Carolina was the home state of the litigants' children where it was alleged the children had lived in this state for more than one year when they were removed to Florida for a two-and-a-half month absence immediately preceding commencement of the custody action in North Carolina. Those facts, we concluded, satisfied the residency requirement of section 50A-3(a)(1)(ii) (predecessor of section 50A-201(a)) such that North Carolina " *'had been* the [children's] home state *within six (6) months* before commencement of the proceeding' " *Id.* at 7, 327 S.E.2d at 636 (emphasis added). Thus, while the children were absent from this state for a significant period upon commencement of the custody action—as in the instant case—North Carolina qualified as the home state.[6]

Additionally, the Hammond children did not live in Japan for six consecutive months before commencement of the Plaintiff's custody proceeding. Rather, North Carolina is the last state in which the children lived for six consecutive months before their departure for Japan and Plaintiff's commencement of the custody proceeding. Therefore, the trial court did not err by concluding North Carolina "was and is the 'home state' " of the children under the UCCJEA and by denying Defendant's Motion to Dismiss.

### III. Conclusion

We conclude the trial court did not err in denying Defendant's Motion to Dismiss for lack of personal jurisdiction and lack of subject matter jurisdiction. The trial court's findings of fact were supported by competent evidence. Our *de novo* review of the trial court's conclusions of law leads us to conclude that the trial court's exercise of personal jurisdiction over Defendant does not offend her due

---

6. We note that while the definition of "home state" under the UCCJA (N.C. Gen. Stat. § 50A-2(5) (repealed Oct. 1, 1999)) differs from the definition under the UCCJEA (N.C. Gen. Stat. § 50A-102(7)), upon enactment of the UCCJEA the General Assembly noted, "[t]he definition of 'home State' has been reworded slightly. No substantive change is intended from the UCCJA." Official Comment, N.C. Gen. Stat. § 50A-102 (2009).

process rights. Furthermore, the trial court properly concluded North Carolina was the "home state" of the parties' minor children at the commencement of the custody action as defined under the UCCJEA. Accordingly, the trial court has subject matter jurisdiction to make the initial child-custody determination.

Affirmed.

Judges McGEE and BEASLEY concur.